1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

A.M.C.,

                Petitioner,

      v.

MINGA WOFFORD, et al.,

                Respondents.

No. 1:26-cv-01312-TLN-AC

**ORDER**

      This matter is before the Court on Petitioner A.M.C.'s ("Petitioner") Petition for Writ of Habeas Corpus and Motion for Temporary Restraining Order ("TRO").  (ECF Nos. 1, 2.) Respondents filed a response and opposition.  (ECF No. 9.)  Petitioner replied.  (ECF No. 11.) For the reasons set forth below, the Court GRANTS Petitioner's Petition and DENIES the Motion for TRO as moot.

///
///
///
///
///
///

1

## I. FACTUAL BACKGROUND[1]

The instant action arises from Petitioner's allegedly unlawful detention. (*See* ECF No. 1.) Petitioner is a 43-year-old native and citizen of Mexico. (ECF No. 2 at 9.) Petitioner entered the United States on February 4, 2004, through Phoenix, Arizona, where he was detained at the border, fingerprinted, and released. (*Id.*) In 2016, Petitioner was arrested by U.S. Immigration and Customs Enforcement ("ICE") in the Sacramento area and detained for approximately two months before being released on bond. (*Id.*) Soon after his release, Petitioner applied for asylum and his wife, a U.S. citizen, filed a Form I-130 petition on his behalf. (*Id.*) On January 14, 2026, Petitioner received notice that the I-130 petition had been approved. (*Id.*)

Prior to his detention, Petitioner resided in Stockton, California, with his wife and children. (*Id.*) Petitioner is married to a U.S. citizen and is the father of five children, all of whom are U.S. citizens. (*Id.*) Four of his children are minors under the age of eighteen. (*Id.*) Petitioner worked full-time in the fields in Stockton and was the sole financial provider for his household. (*Id.* at 10.) Since his detention, his wife struggled financially and has relied on assistance from her mother to support the family. (*Id.*) Petitioner possesses a valid U.S. driver's license, a valid employment authorization document, and a Social Security card. (*Id.*)

Petitioner has the following prior convictions: a 2009 conviction for driving under the influence under California Vehicle Code § 231529b); a 2013 conviction under California Health and Safety Code § 11550(a) for being under the influence of a controlled substance; and a 2016 conviction for hit and run under California Vehicle Code § 2002(a). (*Id.*) Petitioner was also arrested in 2015 for misdemeanor battery under California Penal Code § 242. (*Id.*) Petitioner successfully complied with the terms of his probation and enrolled in a court-ordered driving under the influence program. (*Id.*) Over the past ten years, Petitioner has made it a priority to change his life and has stayed out of trouble. (*Id.*) U.S. Department of Homeland Security ("DHS") was aware of these charges when it first detained Petitioner in 2016 before later

---

[1]     The instant factual background is taken largely verbatim from Petitioner's motion for TRO. (ECF No. 2.) Respondents do not dispute the recitation of facts. (*See generally* ECF No. 11.)

releasing him on bond.  (*Id.*)  Petitioner does not have any new criminal charges after his release in 2016.  (*Id.*)

On December 17, 2025, Petitioner received an appointment notice instructing him to appear at the Sacramento ICE office on January 14, 2026.  (*Id.*)  On January 14, 2026, Petitioner appeared at the ICE office with his attorney and his wife.  (*Id.*)  After being interviewed and providing requested documents, the officer left the room and retuned with two additional officers who detained Petitioner.  (*Id.*)  Petitioner was informed he was under arrest but was not given an explanation.  (*Id.*)

Petitioner was taken to another floor for intake processing and informed his case was pending and that he would have to see a judge.  (*Id.*)  After approximately six hours, Petitioner was transported to the Mesa Verde Detention Facility.  (*Id.*)  Upon arrival, Petitioner waited an additional five hours before being placed in dormitories.  (*Id.*)  Petitioner remains detained at Mesa Verde.  (*Id.*)

On February 13, 2026, Petitioner filed the instant Petition for Writ of Habeas Corpus and motion for TRO, challenging the lawfulness of his civil detention and seeking immediate release.  (*See* ECF No. 1.)  On February 17, 2026, the Court ordered Respondents to file a response.  (ECF No. 9.)  On February 18, 2026, Respondents filed a response and opposition to the motion for TRO.  (ECF No. 11.)  Respondents "suggest that if the Court is inclined to grant a preliminary injunction, judicial economy counsels that the Court should go further and enter a final judgment grating the petition for habeas corpus on the merits."  (*Id.* at 2.)  Accordingly, the Court now turns to consideration of the Petition on its merits.

## II.     STANDARD OF LAW

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the

3

1  Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has

2  served as a means of reviewing the legality of Executive detention, and it is in that context that its

3  protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  Accordingly, a

4  district court's habeas jurisdiction includes challenges to immigration detention.  *See Zadvydas v.*

5  *Davis*, 533 U.S. 678, 687 (2001).

6  **III.   ANALYSIS**

7  In his Petition for Writ of Habeas Corpus, Petitioner claims he is being unlawfully

8  subjected to mandatory detention in violation of procedural due process.[2]  (*See* ECF No. 1.)  In

9  response, Respondents contend Petitioner is an "applicant for admission" who is subject to

10  mandatory detention by ICE under 8 U.S.C. § 1225(b)(2) ("§ 1225(b)(2)").  (ECF No. 11 at 1–3.)

11  The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or

12  property without due process of law.  U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d

13  976, 990 (9th Cir. 2017).  The Due Process Clause applies to all "persons" within the borders of

14  the United States, regardless of immigration status.  *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

15  These due process rights extend to immigration proceedings and detention.  *Id.* at 693–94.

16  Courts examine procedural due process claims in two steps: the first asks whether there

17  exists a protected liberty interest under the Due Process Clause, and the second examines the

18  procedures necessary to ensure any deprivation of that protected liberty interest accords with the

19  Constitution.  *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989);

20  *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies,

21  the question remains what process is due.").

22  A.   Liberty Interest

23  As for the first step, the Court finds Petitioner has established a protectable liberty

24  interest.  *See Rico-Tapia v. Smith*, No. CV 25-00379 SASP-KJM, 2025 WL 2950089, at *8 (D.

25  Haw. Oct. 10, 2025) (noting "[e]ven where the revocation of a person's freedom is authorized by

26

---

27  [2]    Petitioner also asserts a claim for violation of substantive due process.  (ECF No. 1 at 23–
24.)  The Court finds it need not address Petitioner's additional claim to rule on the Petition, as

28  this claim seeks the same relief Petitioner seeks in his procedural due process claim.

1    statute, that person may retain a protected liberty interest under the Due Process Clause").  "[T]he

2    government's decision to release an individual from custody creates 'an implicit promise,' upon

3    which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to

4    the . . . conditions [of release]."  *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24,

5    2025) (quoting *Morrissey*, 408 U.S. at 482) (modifications in original)).  "Accordingly, a

6    noncitizen released from custody pending removal proceedings has a protected liberty interest in

7    remaining out of custody."  *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL

8    2637503, at *6 (N.D. Cal. Sept. 12, 2025).  To determine whether an individual's conditional

9    release rises to the level of a protected liberty interest, courts have "compar[ed] the specific

10   conditional release in the case before them with the liberty interest in parole as characterized by

11   *Morrissey*."  *R.D.T.M. v. Wofford*, No. 1:25-cv-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D.

12   Cal. Sept 9, 2025).

13         Here, the Court agrees with Petitioner that he has a protected liberty interest in his

14   continued freedom as he was released on bond on September 30, 2016.  (ECF No. 2 at 9, 16; ECF

15   No. 11 at 2.)  Under *Morrissey*, this release implied a promise that he would not be re-detained,

16   during the pendency of his immigration proceedings, if he abided by the terms of his release.

17   Further, the Due Process Clause "applies to noncitizens in this country in connection with

18   removal proceedings even if their presence is unlawful or temporary."  *Manzanarez v. Bondi*, No.

19   1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025).

20         The Court does not find persuasive Respondents' argument that Petitioner is subject to

21   mandatory detention under 8 U.S.C. § 1225(b) because he is an "applicant for admission."  (ECF

22   No. 11 at 1–3.)  This Court has now ruled on this same issue countless times and courts

23   throughout the Ninth Circuit have overwhelmingly rejected Respondents' legal position and

24   found the government's re-classification of individuals under the mandatory detention policy

25   unlawful.  *See Morales-Flores v. Lyons*, No. 1:25-CV-01640-TLN-EFB, 2025 WL 3552841, at

26   *3 (E.D. Cal. Dec. 11, 2025) (explaining this Court's reasons for taking this position and

27   collecting cases); *see also Maldonado Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM (C.D.

28   Cal. Dec. 18, 2025) (issuing vacatur of unlawful DHS mandatory detention policy for a

1  nationwide certified class).

2          As this Court has previously noted, it will not reconsider its position absent new

3  argument, case law, or distinguishable facts.  Respondents provide no such grounds for

4  reconsideration.  (*See* ECF No. 11.)  Thus, Petitioner is not an "applicant for admission" subject

5  to mandatory detention under § 1225(b)(2).  Petitioner is instead subject to 8 U.S.C. § 1226(a)

6  ("§ 1226(a)") and entitled to the process that statute requires prior to re-detention, including a

7  bond hearing at a minimum.[3]  Accordingly, Petitioner has a protected liberty interest in his

8  continued freedom protected by the Due Process Clause.

9                      B.    Procedures Required

10         As to the second step — what procedures or process is due — the Court considers three

11  factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an

12  erroneous deprivation of such interest through the procedures used, and the probable value, if any,

13  of additional or substitute procedural safeguards;" and (3) "the Government's interest, including

14  the function involved and the fiscal and administrative burdens that the additional or substitute

15  procedural requirement would entail."  *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  As set

16  forth below, the Court finds Respondents violated Petitioner's due process rights.

17         First, Petitioner has a substantial private interest in remaining free from detention.

18  "Freedom from imprisonment — from government custody, detention, or other forms of physical

19  restraint — lies at the heart of the liberty [the Due Process] Clause protects."  *Zadvydas*, 533 U.S.

20  at 690.  Petitioner asserts that what is at stake for him in this case is "one of the most profound

21  individual interests recognized by [the] legal system: whether ICE may unilaterally nullify a prior

22  decision releasing a non-citizen from custody and be able to take away his physical freedom[.]"

23  (ECF No. 2 at 20.)  Accordingly, this factor weighs in favor of finding Petitioner's private interest

24

---

25  [3]      Respondents request the Court hold its ruling on the merits in abeyance pending the Ninth
Circuit's decisions regarding the appeals in *Rodriguez Vazquez v. Bostock*, 779 F. Supp. 3d 1239
26  (W.D. Wash. 2025), and *Carballo v. Andrews*, No. 1:22-cv-00978-KES-EPG (HC), 2025 WL
2381464 (E.D. Cal. Aug. 15, 2025).  (ECF No. 8 at 3.)  The Court denies this request.  As
27  discussed herein, the Court finds Respondents violated Petitioner's procedural due process rights
and the Court will not delay injunctive relief on the prospective chance a pending appeal could
28  change this outcome.

1    has been impacted by his detention.  *See Manzanarez*, 2025 WL 3247258, at *4 (finding

2    similarly).

3            Second, the risk of erroneous deprivation is considerable given Petitioner has not received

4    any hearing, either pre- or post-detention.  Indeed, Petitioner notes he was not provided a hearing

5    in front of a neutral adjudicator at which the government is held to show there are sufficiently

6    changed circumstances such that his 2016 release should be altered or revoked because there is

7    clear and convincing evidence to establish he is a danger to the community or a flight risk.  (ECF

8    No. 2 at 23); *see also Manzanarez*, 2025 WL 3247258, at *4 (quoting *A.E. v. Andrews*, No. 25-

9    cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025) ("The risk of an

10   erroneous deprivation [of liberty] is high" when "[the petitioner] has not received any bond or

11   custody redetermination hearing.")).  Thus, the Court finds Petitioner was likely erroneously

12   deprived of his liberty interest.  Without any procedural safeguards to determine whether his

13   detention was justifiable, the probative value of additional procedural safeguards is high.

14   *R.D.T.M.*, 2025 WL 2617255, at *4.

15           Finally, the Government's interest is low, and the effort and cost required to provide

16   Petitioner with procedural safeguards are minimal.  *See Garcia v. Andrews*, No. 2:25-CV-01884-

17   TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025).  Where removal is not imminent

18   under a final order of removal, "[t]he government has no legitimate interest in detaining

19   individuals who have been determined not to be a danger to the community and whose

20   appearance at future immigration proceedings can be reasonably ensured by [ ] bond or

21   alternative conditions."  *Hernandez*, 872 F.3d at 994; *see also R.D.T.M.*, 2025 WL 2617255, at *4

22   ("Civil immigration detention, which is nonpunitive in purpose and effect is justified when a

23   noncitizen presents a risk of flight or danger to the community."  (cleaned up)).

24           Respondents do not argue that Petitioner is a danger to the community or a flight risk.

25   (*See generally* ECF No. 11.)  Respondents state in a singular sentence in the background section

26   of their opposition brief that "Petitioner has a criminal history including several arrests and

27   convictions" and then proceed to list what those arrests and convictions are.  (*Id.*)  Therefore, on

28   the record before the Court, at the time Respondents detained Petitioner, they had no legitimate

1     interest to do so.  The Court agrees with Petitioner that the mere reference to his criminal history

2     does not alter the constitutional analysis.  (ECF No. 12 at 6.)  As Petitioner notes, "DHS

3     previously considered this same criminal history in 2016 when it released [Petitioner] on bond

4     under § 1226(a), and he remained at liberty in the community for nearly a decade without re-

5     detention."  (*Id.*)  The Court further agrees with Petitioner that if Respondents believe "these prior

6     convictions demonstrate present dangerousness or flight risk, due process requires that [they]

7     prove that assertion at a pre-deprivation bond hearing by clear and convincing evidence," as

8     "dated criminal convictions — already known to DHS at the time of his prior release — cannot

9     substitute for the individualized determination the Constitution requires, nor can it justify

10     mandatory detention without a hearing."  (*Id.*)

11          Moreover, the cost and time of procedural safeguards are minimal here.  Notice and

12     custody hearings are routine processes for Respondents with minimal burden.  Indeed, these are

13     the very processes that were owed to Petitioner under § 1226(a).  Any delay in re-detention (if

14     justified) for time to provide notice and a hearing would have been minimal.  It is also less of a

15     fiscal and administrative burden for Respondents to return Petitioner home to await a

16     determination on his immigration proceedings than to continue to detain him.  *See Diaz v. Kaiser*,

17     No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) ("[T]he Ninth Circuit

18     has recognized that the costs to the public of immigration detention are staggering.").

19          The Court finds that, under these circumstances, Respondents are required to provide

20     notice and a pre-deprivation hearing.  The United States Supreme Court "usually has held that the

21     Constitution requires some kind of a hearing *before* the State deprives a person of liberty or

22     property."  *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original).  The Court

23     describes post-deprivation remedies as the "special case" where those are "the only remedies the

24     State could be expected to provide."  *Id.* at 129.  Here — where Petitioner has substantially

25     complied with the conditions of his release and there is no final order of removal — the Court

26     finds pre-deprivation notice and a hearing are possible and valuable to preventing erroneous

27     deprivation of liberty.

28     ///

On balance, this Court finds the *Mathews* factors demonstrate Petitioner was entitled to pre-deprivation notice and hearing to determine whether detention was warranted. Respondents did not provide either. Moreover, Respondents did not provide a post-deprivation opportunity to be heard. The Court accordingly finds Respondents violated Petitioner's procedural due process rights.

## IV.    CONCLUSION

For the foregoing reasons, the Court GRANTS the Petition for Writ of Habeas Corpus (ECF No. 1) and DENIES the Motion for TRO as moot (ECF No. 2). Respondents must IMMEDIATELY RELEASE Petitioner A.M.C. from custody under the same conditions he was released prior to his current detention. *See Yang v. Kaiser*, No. 2:25-cv-02205-DAD-AC, 2025 WL 2791778, at *11 (E.D. Cal. Aug. 20, 2025) (status quo ante is "the last uncontested status which preceded the pending controversy.").

At the time of release, Respondents must return all of Petitioner's documents and possessions. Respondents shall not impose any additional restrictions on him, unless such restrictions are determined to be necessary at a future pre-deprivation/custody hearing. **Respondents must file a notice certifying compliance with this provision of the Court's Order by March 6, 2026.**

Respondents are ENJOINED and RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where (a) Respondents show material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence before a neutral decisionmaker that Petitioner poses a danger to the community or a flight risk. At any such hearing, Petitioner shall be allowed to have counsel present.

The Clerk of the Court shall enter judgment in favor of Petitioner and close this case.

//

//

//

9

1    IT IS SO ORDERED.

2    Date: March 3, 2026

3

4    _____
     TROY L. NUNLEY

5    CHIEF UNITED STATES DISTRICT JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28